1  MICHAEL WALLIN, Cal. Bar No. 240344
   WALLIN & RUSSELL LLP
2  26000 Towne Centre Drive, Suite 130
   Foothill Ranch, California 92610
3  Telephone:  949-652-2200
   Facsimile:   949-652-2210
4  mwallin@wallinrussell.com

5  Attorneys for Creditors
   THOMAS I. MCKNEW, IV and
6  LISA A. MCKNEW

7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  In re:                              Case No. 8:23-bk-10094-SC

12  DAVID ALLEN WILSON,                 Chapter 7

13              Debtor.

14                                      **OPPOSITION TO AND REQUEST FOR
                                        HEARING REGARDING MOTION TO
                                        AVOID LIEN UNDER 11 US.C. § 522(f);
15                                      DECLARATION OF THOMAS I.
                                        MCKNEW, IV**

16

17                                      Hearing
                                        Date:  [To Be Determined]
18                                      Time:  [To Be Determined]
                                        Place:  Courtroom 5C
19                                              411 W. Fourth Street
                                                Santa Ana, CA 92701
20

21

22

23

24

25

26

27

28

-1-

# TABLE OF CONTENTS

I.  INTRODUCTION ……………………………………………….……………4

II. STATEMENT OF FACTS ………………………………………………….....5

    A.  Judgment …………………………………………………………...5

    B.  24352 Santa Clara Avenue ………………………………………….6

    C.  Value of Property ……………………………………..……...…….7

    D.  Levy on Property ………………… ………………………………..7

    E.  Bankruptcy Case ………………………………………………….10

    F.  Schedules and Exemptions ……….…………………….…………10

    G.  Meeting of Creditors …………………………………….…………10

III. LEGAL ARGUMENT …………………………………………….....11

    A.  Objections to Asserted Homestead Exemption ……………………....11

    B.  Debtor's Asserted Lack of Interest in the Property……… ………….....12

    C.  Debtor's Fraudulent Conduct……………………...…...…………….13

    D.  Equity in the Property ……………………………….…………….14

    E.  Non-Dischargeability ……………………………………….14

IV. CONCLUSION ……………………………………………………….14

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

First Nat'l Bank of Mobile v. Norris, 701 F.2d 902 (11th Cir. 1983) ……………….……...11

In re Aubry, 558 BR 333 (Bankr. C.D. Cal. 2016) …………………………………………13

In re Barnes, 198 B.R. 779 (9th Cir. BAP 1996) …………………………………………12

In re Bernard, 40 F.3d 1028 (9th Cir. 1994) …………………….……...…………………12

In re Edmonston, 107 F.3d 74 (1st Cir. 1997) ……………………………...…….…………11

In re Gilman, 887 F.3d 956 (9th Cir. 2018) …………………………………………………13

In re Gray, 523 B.R. 170 (9th Cir. BAP 2014) ………………………………….…….……13

In re Schaefers, 623 B.R. 777 (9th Cir. BAP)…………….… ……………………………….5

In re Sloma, 43 F.3d 637 (11th Cir. 1995) …………………………………………………11

In re Stijakovich-Santilli, 542 B.R. 245 (9th Cir. BAP 2015) …………………………...13

Law v. Siegel, 571 U.S. 415 (2014) …………………………………………………………13

Matter of Schoonover, 331 F.3d 575 (7th Cir. 2003) ……………………….……………12

Schwab v. Reilly, 560 U.S. 770 (2010) ………………………………………...……………12


<u>Statutes</u>

11 U.S.C. § 341 ………………………………………………………...………10

11 U.S.C. § 522 …………………………………………………….…….…...5

11 U.S.C. § 523 ……………………………………………………………….5

Code of Civil Procedure § 704.740 …………………………………………………......7

1    Secured creditors Thomas I. McKnew, IV and Lisa A. McKnew (collectively, "McKnew")

2    hereby submit their opposition to, and request for hearing regarding, debtor David Allen Wilson's

3    *Motion to Avoid Lien Under 11 U.S.C. § 522(f)* (the "Motion"). [Docket No. 62.]

4    **I.    INTRODUCTION**

5    The Motion should be denied for several reasons, including that debtor David Allen

6    Wilson ("Debtor") seems to change his testimony to serve his interests. For example, only a few

7    months ago, Debtor testified to Judge Kwan that Debtor has no interest in 24352 Santa Clara

8    Avenue in Dana Point because (1) Debtor and his wife, Beata Wilson ("Beata")[1], have a post-

9    nuptial agreement conveying the Property solely to Beata, and (2) Debtor recorded a deed in

10    September 2021 transferring the Property to Beata. *See* Ex. E. Debtor submitted such testimony

11    in opposition to McKnew's efforts to force the sale of the Property to partially satisfy McKnew's

12    judgment.

13    Now, only a short time later, Debtor takes the position that he has an interest in 100% of

14    the Property. Such a position suits his current desire to avoid McKnew's judgment lien. This is

15    because Debtor is aware that his ability to claim an exemption in the Property depends on him

16    having an ownership interest in the Property. Debtor's Schedules and Statement of Financial

17    Affairs make no mention whatsoever of the above-described post-nuptial agreement or transfer,

18    nor of several other transfers described below.

19    The Motion should be denied because of Debtor's pre-petition conduct. In addition, the

20    Motion should be denied for the following reasons:

21    1.    The Motion is premature. Debtor's ability to avoid McKnew's judgment lien

22    pursuant to 11 U.S.C. § 522(f) depends on whether Debtor is entitled to an exemption in the

23    Property. The Trustee's and other interested parties' deadline to object to Debtor's asserted

24    exemption has not yet arrived because such deadline is no earlier than 30 days after the conclusion

25    of Debtor's § 341(a) meeting of creditors. Debtor's meeting of creditors has not yet concluded.

26    As a result, objections to Debtor's asserted exemption may still be filed, and McKnew hereby

27    _____

28    [1]    No disrespect is intended by the use of first names.

objects to Debtor's asserted exemption by this Opposition.

2.      Debtor is not entitled to any exemption in the Property because of Debtor's admitted lack of interest in the Property.  *In re Schaefers*, 623 B.R. 777, 783-784 (9th Cir. BAP 2020).

3.      Debtor is not entitled to any exemption in the Property because of Debtor's pre-petition transfers of the Property and Debtor's other wrongful conduct.  *See* 11 USC §§ 522(o) and (q).

4.      McKnew's judgment against Debtor is *non-dischargeable*, as has already been determined by Judge Kwan in Debtor's prior bankruptcy case filed in 2008.  As a result, avoiding McKnew's judgment lien would have no material impact because the judgment will remain enforceable following this bankruptcy case and, consequently, McKnew could merely record a judgment lien following conclusion of this case.

5.      Debtor may not receive any discharge whatsoever in this bankruptcy case because of Debtor's troubling testimony and conduct to date, as detailed below.  The Trustee's deadline to object to discharge pursuant to 11 U.S.C. § 727 has been extended to August 31, 2023.

6.      The estimated value of the Property, $5,350,000 according to the most recent appraisal obtained by McKnew, exceeds the sum of Debtor's asserted exemption ($678,378.00) and the amount owing to the 1st position lienholder ($4,060,396.27), which totals $4,738,774.27.

## II.     STATEMENT OF FACTS

### A.  Judgment

In 2008, David Allen Wilson ("Debtor") filed chapter 7 bankruptcy, Case No. 2:12-bk-16195-RK.  The case was assigned to the Honorable Robert Kwan.  In 2009, McKnew initiated an adversary proceeding against Debtor.  In the adversary proceeding, McKnew sought a determination that Debtor's liability to McKnew was non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

The adversary proceeding went to trial in 2012.  At the conclusion of trial and post-trial briefing, Judge Kwan issued his *Memorandum Decision on Adversary Complaint for Nondischargeability of Debts* (the "Memorandum Decision") and found that Debtor's liability to

1  McKnew was non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).  In addition, the Court

2  found that Debtor's misrepresentations actually and proximately damaged McKnew in the amount

3  of $2,500,000.00, plus attorneys' fees, prejudgment interest, and costs of suit.  Thereafter, on

4  October 10, 2013, the Court entered judgment consistent with the Memorandum Decision.

5       McKnew then filed their *Motion for Order Awarding Attorneys' Fees and/or to Fix

6  Amount of Attorneys' Fees* and *Motion for Order Awarding Pre-Judgment Interest*.  In 2014, the

7  Court issued its *Statement of Decision on the Motion for Pre-Judgment Interest* finding that

8  McKnew is entitled to pre-judgment interest at the rate of 7% simple interest per annum on the

9  $2,500,000.00 of damages, commencing April 30, 2009.

10      Thereafter, in April 2014, the Court entered its *Amended Judgment in Favor of Plaintiffs

11 and Against Defendant Based on Memorandum Decision on Adversary Complaint for

12 Nondischargeability of Debts* (the "Judgment").  *See* Ex A.  The Judgment states, in pertinent part:

13       IT IS ORDERED AND ADJUDGED that on their claim for relief under §
         523(a)(2)(A) the court finds by a preponderance of the evidence that Wilson
14       represented he would perform his contractual obligations under the Cash Infusion
         Agreement, including selling or refinancing his Residence or the his Office property
15       and thus, the court finds by a preponderance of the evidence that Wilson's
         misrepresentation actually and proximately damaged Plaintiffs in the amount of
16       $2,500,000.00 plus: (1) $0.00 in attorneys' fees; (2) $845,270.35 in pre-judgment
         interest through February 26, 2014, accruing at $475.45 per day, and $14,587.70 in
17       costs of suit.  *See* Judgment.

18      The current amount owing on the Judgment, with post-judgment interest and after crediting

19 amounts collected, is no less than $3,207,908.88.  *See* Ex. B.

20      On August 21, 2014, McKnew caused an Abstract of Judgment to be recorded in the

21 Official Records of Orange County (the "Official Records") as Document No. 2014-000338934,

22 thereby obtaining a lien encumbering all of Debtor's real property located within Orange County.

23 *See* Ex. C.

24      **B.  24352 Santa Clara Avenue**

25      In 1995, Debtor and his spouse, Beata Wilson ("Beata"), acquired certain real property

26 commonly known as 24352 Santa Clara Avenue, Dana Point, California 92629 (the "Property").

27 *See* Ex. D.  The Property's Assessor Parcel Number is 682-071-06.

28

In September 2021, many years after McKnew recorded their Abstract of Judgment and obtained their judgment lien encumbering the Property, Debtor recorded a deed in which Debtor purported to transfer his entire interest in the Property to Beata. *See* Ex. E.  The quitclaim deed states that Beata paid monetary consideration of "One Dollar".  The quitclaim deed further states that the purported transfer is exempt from payment of transfer taxes because:

> Exempt from fee per [Government Code] 27388.1(a)(2); a transfer of real property that is a residential dwelling to an owner-occupier.

Notably, the quitclaim deed is dated *March 13, 2013* (a date *prior to* entry of the Judgment), but was not recorded until *September 2021*.  This suggests that Debtor sought to shield the Property from McKnew before McKnew could obtain their judgment lien against the Property.

Thereafter, on October 5, 2022, Beata recorded a deed purporting to transfer the Property to Richmond Capital LLC ("Richmond Capital").  *See* Ex. F.  Richmond Capital appears to be an entity owned and controlled by Debtor and/or his adult daughter, Michele Wilson.  *See* Ex. G.

Thereafter, 12 days later, on October 17, 2022, Richmond Capital recorded a deed purporting to transfer the Property to Beata.  *See* Ex. H.

### C.  Value of Property

According to an appraisal recently performed by John Davidson at McKnew's request, the Property is estimated to be worth $5,350,000.00 as of the date of Mr. Davidson's appraisal.  *See* Ex. I.

### D.  Levy on Property

Before Debtor initiated this bankruptcy case, and in order to enforce the Judgment, McKnew caused the Court to issue a Writ of Execution with respect to the Judgment.  Thereafter, McKnew delivered the Writ of Execution to the United States Marshal's Office for the Central District of California (the "Marshal") and instructed the Marshal to levy on the Property.  The Marshal then levied on the Property.

Thereafter, on October 5, 2022, pursuant to California Code of Civil Procedure ("CCP") §§ 704.740 through 704.850, McKnew filed their *Application for Issuance of Order to Show Cause Regarding 24352 Santa Clara Avenue, Dana Point, CA 92629* (the "Sale Application").  In

the Sale Application, McKnew requested that the Court enter an order allowing the Marshal to sell

the Property at auction to partially satisfy the Judgment.

On October 25, 2022, Debtor filed his opposition to the Application ("Debtor Opposition

#1"). *See* Ex. J.  In Debtor Opposition #1, Debtor asserts:

> Beata Wilson, <u>the sole owner of the property</u>, is expected to assert a homestead exemption. *See* Ex. J at p. 2, ln. 19 (emphasis added).

On the same date, Beata filed her opposition to the Application along with a supporting

declaration (the "Beata Opposition").  *See* Ex. K.  In the Beata Opposition, Beata states:

> … there is a valid post-nuptial agreement between the parties dated March 6, 2002…  This agreement was executed well in advance of David Wilson's bankruptcy and specifically identifies Mrs. Wilson's interest in the Property as her separate property. *See* Ex. K. at p. 7, lns. 12-16.

The Beata Opposition includes a copy of the purported post-nuptial agreement between

Debtor and Beata (the "Post-Nuptial Agreement").  *See* Ex. L.

On January 5, 2023, Debtor filed his supplemental opposition to the Application ("Debtor

Opposition #2).  *See* Ex. M.  In Debtor Opposition #2, Debtor states:

> As a threshold matter [Debtor] renews his objection to the sale of the subject property on the basis that he is not an owner of the property so this asset is not subject to the collection of a judgment against (only) him. *See* Ex. M at p. 2, lns. 1-2.

In other words, Debtor and Beata tried to prevent McKnew from pursuing the Property by

arguing that Debtor holds no interest in the Property.  To support their assertion, Debtor and Beata

relied on the Post-Nuptial Agreement.  However, Debtor's and Beata's under oath testimony had

two critical problems, as follows:

First, Beata's debtor examination was taken on October 29, 2020.  At the examination,

Beata was asked, point blank, whether she had any pre-nuptial or post-nuptial agreement.  She

stated, flatly, "**No**". The transcript reads as follows:

> Q. All right. And do you have a prenup agreement?
> A. No.
> Q. Do you have a post –
> A. Any other questions related to this?

Q. Do you have any post-nup agreement with Mr. Wilson?
A. No.

As a result, Beata either falsely testified under oath at her examination or in her declaration accompanying the Beata Opposition.

Before concluding that Debtor and Beata lied in their oppositions to the Application, McKnew considered other potential explanations for the false testimony. For example, McKnew considered whether, perhaps, Beata did not recall the Post-Nuptial Agreement when she testified at her examination. If so, then perhaps her false testimony was not intentional.

However, that explanation appears impossible. This is because Beata declared that she entered into the Post-Nuptial Agreement on March 6, 2002. The first sentence of the post-nuptial agreement states:

This Postnuptial Agreement (this "Agreement") is entered into on 6th day of March 2002 …

On the second page of the Post-Nuptial Agreement, three specific properties are identified for the purpose of making clear that such properties are Beata's separate property. One such property is identified as 27926 Finisterra, Mission Viejo, California 92692. Such paragraph states as follows:

Separate property. With respect to certain property acquired during the marriage, any property acquired and given to Second Party individually during marriage will be treated as such Party's non-martial, separate and individual property, including any increase in the value relating to the property, as listed below:

1. 232 Morningstar Dr., Breckenridge, CO 80424
2. 24352 Santa Clara Ave., Dana Point, CA 92629
3. **27926 Finisterra, Mission Viejo, CA 92692**. *See* Ex. L (emphasis added).

Critically, Debtor and Beata did not buy 27926 Finisterra until *September 2, 2005*, as evidenced by the deed attached hereto as Exhibit N. To state the obvious, a post-nuptial agreement executed in *2002* could not possibly have referenced a property which neither Debtor nor Beata knew existed until *2005*. In other words, contrary to her sworn testimony, Debtor and Beata possibly did not enter into the postnuptial agreement in 2002.

The Sale Application was scheduled to be heard on January 19, 2023. The day prior to the

1   hearing, Judge Kwan posted a tentative ruling indicating his intention to allow the Marshal to sell

2   the Property.  *See* Ex. O.

3       Debtor filed this bankruptcy case hours before the hearing on the Sale Application.

4       **E.  Bankruptcy Case**

5       Debtor initiated this Chapter 7 case on January 18, 2023.  Beata is *not* a joint petitioner nor

6   subject to her own bankruptcy proceeding.

7       **F.  Schedules and Exemptions**

8       In Debtor's Schedules, Debtor states that he owns *100%* of the Property.  *See* Docket No.

9   11.  Further, to the best of McKnew's knowledge, in Debtor's Schedules and Statement of

10  Financial Affairs, Debtor makes *no mention whatsoever* of any of the following:

11          • The purported transfer from Debtor to Beata in September 2021.

12          • The purported transfer from Beata to Richmond Capital on October 5, 2022.

13          • The purported transfer from Richmond Capital to Beata on October 17, 2022.

14          • The Post-Nuptial Agreement.

15      **G.  Meeting of Creditors**

16      Debtor's § 341a meeting of creditors has begun but has not yet been concluded.  The next

17  meeting is scheduled to take place on August 8, 2023.  At the meeting's conducted to date, Debtor

18  has made several troubling admissions, including that Beata recently leased a portion of the

19  Property to a third party, another fact which Debtor failed to disclose in his Schedules and

20  Statement of Financial Affairs.  In addition, Debtor testified that the business he formerly owned,

21  American General Corporation, is now owned by his daughter, Michele Wilson, and that Debtor

22  has not been an officer of American General Corporation for several years.  However, when

23  presented with numerous recent emails in which Debtor identifies himself to third parties as the

24  President of American General Corporation, Debtor had virtually no explanation.

25      For these reasons and others, the Trustee asked Debtor to stipulate to extend the deadline

26  to object to discharge pursuant to 11 U.S.C. § 727.  Such deadline has been extended to August

27  31, 2023.  *See* Docket No. 67.

28

1    **III.    LEGAL ARGUMENT**

2          As discussed below, the Motion should be denied because of: (1) Debtor's asserted lack of

3    interest in the Property, (2) Debtor's conduct, and (3) the equity in the Property.

4          **A.  Objections to Asserted Homestead Exemption**

5          As a preliminary matter, McKnew hereby objects to Debtor's asserted exemption in the

6    Property.  Any interested party may object to Debtor's claimed exemptions.  *See* 11 USC § 522(l).

7    The Trustee, the U.S. Trustee, and any of Debtor's creditors qualify as interested parties.  *See*

8    FRBP 4003(b); *First Nat'l Bank of Mobile v. Norris*, 701 F.2d 902, 904 (11th Cir. 1983); *In re*

9    *Edmonston*, 107 F.3d 74, 77 (1st Cir. 1997).  Moreover, creditors with valid security interests in

10   Debtor's property, such as McKnew, need not object to Debtor's exemption claims.  *In re Sloma*,

11   43 F.3d 637, 640 (11th Cir. 1995) (secured creditor not required to object to Chapter 7 debtor's

12   claimed exemption in property assigned to creditor to repay loan, and debtors may not exempt

13   property they do not own).

14         An exemption may be objected to on the following grounds, among others:

15       • Ineligibility:  The debtor is not eligible for the claimed exemption.

16       • Excessive Amount:  The amount claimed exceeds the statutory amount.

17       • Low Property Value:  The value of property claimed exempt is too low.

18       • Voluntary Transfer/Concealment:  The debtor voluntarily transferred or concealed

19          property recovered by the trustee, thereby waiving the right to claim the exemption.

20          *See* 11 USC § 522(g).

21         In addition, there are several statutory grounds for objecting to a debtor's asserted

22   *homestead* exemption, including:

23       • Reduction of Homestead Under 11 U.S.C. § 522(o):  The debtor (with the intent to

24          hinder, delay or defraud a creditor) used nonexempt assets to acquire the homestead

25          or increase its value within the 10-year period preceding the filing of the

26          bankruptcy petition.  *See* 11 USC § 522(o).

27       • Homestead "Cap" Under 11 U.S.C. § 522(q):  The debtor engaged in certain bad

28          acts (violating securities laws, intentionally causing serious personal injury or

1    death) during the five years preceding bankruptcy.  *See* 11 USC § 522(q).

2    • Fraudulently-Claimed Exemption:  A trustee may file an exemption objection any

3    time prior to one year after the case closes where the debtor fraudulently claimed an

4    exemption.  *See* FRBP 4003(b)(2).

5    In general, written objections to Debtor's asserted exempt property list must be filed within

6    30 days after the § 341(a) meeting of creditors *concludes*.  FRBP 4003(b)(1); *Schwab v. Reilly*,

7    560 U.S. 770, 775 (2010).  If the § 341(a) creditors' meeting is rescheduled or continued, the

8    deadline for objecting to the debtor's claimed exemptions is automatically extended to run from

9    the next scheduled meeting date.  *In re Bernard*, 40 F.3d 1028, 1030, fn. 1 (9th Cir. 1994).

10   Moreover, even if the time for filing objections has expired, a creditor may still contest

11   exemptions when the debtor attempts to avoid the creditor's lien.  FRBP 4003(d); *Matter of*

12   *Schoonover*, 331 F.3d 575, 578 (7th Cir. 2003); *In re Barnes*, 198 B.R. 779, 784 (9th Cir. BAP

13   1996).

14   Here, any interested party may still object to Debtor's asserted exemption in the Property

15   because Debtor's § 341(a) meeting of creditors has not yet concluded.  As a result, it would be

16   premature for the Court to grant the Motion.

17   **B.  Debtor's Asserted Lack of Interest in the Property**

18   Exemptions require determination of Debtor's aggregate "interest" in the Property.  *See* 11

19   U.S.C. § 522(d).  An exemptible "interest" generally means the fair market value of the exemption

20   claimant's interest in the property (or, if community property, the interest of the claimant and their

21   spouse) over and above all perfected liens on the property (*i.e.*, the debtor's equity in the property).

22   An ownership interest in the dwelling is not required to claim an automatic homestead exemption.

23   However, Debtor must have *some* type of interest in the property to claim the exemption.  For

24   example, a debtor could not claim a homestead exemption via his ownership of a limited liability

25   company that owned the real property where debtor resided because ownership of the LLC did not

26   provide debtor with any beneficial or equitable interest in the real property.  *In re Schaefers*, 623

27   B.R. 777, 783-784 (9th Cir. BAP 2020).

28   Here, Debtor has repeatedly asserted, under oath, that he has no interest in the Property.  If

1  that is the case, Debtor cannot claim an exemption in the Property.  Debtor cannot have it "both

2  ways" (*i.e.*, he cannot deny an interest in the Property to defend against McKnew's judgment

3  enforcement efforts while simultaneously asserting an interest to get the benefit of a bankruptcy

4  exemption).

5      **C. Debtor's Fraudulent Conduct**

6      When determining whether a debtor has fraudulently asserted an exemption, the Court

7  should examine the facts under the common law standard for fraud, as incorporated in 11 USC §

8  523(a)(2)(A).  Under this standard, the trustee need not show the fraud was not discoverable.

9  Rather, the trustee must demonstrate justifiable reliance on the debtor's false representations

10  regarding the claimed exemption.  *In re Stijakovich-Santilli*, 542 B.R. 245, 257 (9th Cir. BAP

11  2015).  In addition, state law may provide a basis for disallowing a state law exemption for debtor

12  misconduct.  For example, "[W]hen a debtor claims a state-created exemption, the exemption's

13  scope is determined by state law, which may provide that certain types of debtor misconduct

14  warrant denial of the exemption."  *Law v. Siegel*, 571 U.S. 415, 425 (2014); *In re Gray*, 523 B.R.

15  170, 175 (9th Cir. BAP 2014) (post-*Law v. Siegel*, bankruptcy courts must look to state law (not

16  their § 105 equitable powers) to determine whether a basis exists to disallow an exemption

17  because of debtor misconduct.

18      Moreover, several decisions have applied the doctrine of equitable estoppel to deny a

19  debtor's claimed California exemption.  *In re Aubry*, 558 BR 333, 345 (Bankr. C.D. Cal. 2016); *In

20  re Gilman*, 887 F.3d 956, 966 (9th Cir. 2018) (case remanded by Ninth Circuit to bankruptcy court

21  for consideration of, among other things, whether equitable estoppel under California law could be

22  applied to preclude debtor's homestead exemption where creditor claimed debtor did not intend to

23  reside in homestead.  To invoke equitable estoppel under Calif. Evidence Code § 623, a party must

24  show (1) a representation or concealment of material facts, (2) made with knowledge (actual or

25  virtual) of the facts, (3) to a party ignorant (actually and permissibly) of the truth, (4) with the

26  intention (actual or virtual) that the ignorant party act on it; and (5) that party was induced to act

27  on it.  *In re Aubry* at 345.

28      Here, Debtor has acted dishonesty with respect to the Property.  For example, Debtor

1  attempted to transfer the Property to Beata despite knowledge of McKnew's judgment lien.  In

2  addition, Debtor apparently caused the Property to be further transferred to Richmond Capital, an

3  entity which he may own and control.  It appears that, pre-petition, Debtor went to great lengths to

4  try to keep the Property out of McKnew's reach.  Debtor should not be rewarded for such behavior

5  by receiving an exemption which, until recently, he claimed not to own.

6        **D.  Equity in the Property**

7        In the Motion, Debtor asserts that the 1st position lienholder, JPMorgan Chase Bank N.A.

8  ("Chase"), is owed $4,060,396.27.  McKnew wishes to conduct discovery as to the amount owing

9  to Chase because, according to the Motion, Chase's original loan amount was only $1,425,000.

10 Although Debtor has apparently not made a single payment to Chase in many years, McKnew

11 does not fully understand how Chase could be owed $4,060,396.27 on account of an original loan

12 of $1,425,000.

13      Assuming Chase is owed $4,060,396.27, the Motion should not be granted *even if* the

14 Court concludes that Debtor is entitled to an exemption in the Property.  This is because the value

15 of the Property, estimated to be $5,350,000.00 by appraiser John Davidson, exceeds the sum of

16 Debtor's asserted exemption ($678,378.00) and the amount owing to Chase ($4,060,396.27),

17 which totals $4,738,774.27.

18      **E.  Non-Dischargeability**

19      It is undisputed that the Judgment is non-dischargeable because Judge Kwan already

20 deemed the judgment non-dischargeable in 2014.  Moreover, the Trustee's deadline to object to

21 discharge pursuant to 11 U.S.C. § 727 is not until August 31, 2023.  As a result, the Motion should

22 not be granted.  Even if McKnew's judgment lien is avoided, McKnew will be free to continue to

23 enforce the Judgment following closure of this bankruptcy case (or McKnew receiving relief from

24 the automatic stay).

25 //

26 //

27 //

28 //

1

## IV.    CONCLUSION

2          For the foregoing reasons, McKnew respectfully requests that the Court deny the Motion.

3 In the alternative, McKnew respectfully requests that the Court schedule an evidentiary hearing so

4 that further testimony and evidence can be provided as to, among other things, the Property's

5 value and Debtor's entitlement to an exemption in the Property.

6

Dated:  July 30, 2023

7

8                                      WALLIN & RUSSELL LLP

9

10                          By          _____
                                              */s/ Michael Wallin*
11                                        MICHAEL WALLIN
                                        Attorneys for Creditors
12                                    THOMAS I. MCKNEW, IV and
                                          LISA A. MCKNEW

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>DECLARATION OF THOMAS I. MCKNEW, IV</u>

I, Thomas I McKnew, IV, declare:

1.  I am over the age of 18 and have personal knowledge of the facts set forth below, and if called to testify regarding them, I could and would do so competently.

2.  I am a creditor in this bankruptcy case.

3.  In 2008, David Allen Wilson ("Debtor") filed Chapter 7 bankruptcy.

4.  In 2009, my wife, Lisa A. McKnew, and I initiated an adversary proceeding against Debtor.

5.  In the adversary proceeding, we sought a determination that Debtor's liability to Creditor was non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

6.  The adversary proceeding came on for trial on February 2, 2012, February 3, 2012, February 6, 2012, August 30, 2012, August 31, 2012, and September 6, 2012.

7.  At the conclusion of trial and post-trial briefing, the Court issued its *Memorandum Decision on Adversary Complaint for Nondischargeability of Debts* (the "Memorandum Decision") and found that Debtor's liability to my wife and I was non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

8.  In addition, the Court found that Debtor's misrepresentations actually and proximately damaged us in the amount of $2,500,000.00, plus attorneys' fees, prejudgment interest, and costs of suit.

9.  On October 10, 2013, the Court entered judgment consistent with the Memorandum Decision.

10.  We then filed our *Motion for Order Awarding Attorneys' Fees and/or to Fix Amount of Attorneys' Fees* and *Motion for Order Awarding Pre-Judgment Interest*. The Court then issued its *Statement of Decision on the Motion for Pre-Judgment Interest* finding that we are entitled to pre-judgment interest at the rate of 7% simple interest per annum on the $2,500,000.00 of damages, commencing April 30, 2009.

11.  In April 2014, the Court entered its *Amended Judgment in Favor of Plaintiffs and Against Defendant Based on Memorandum Decision on Adversary Complaint for*

*Nondischargeability of Debts* (the "Judgment").  A true and correct copy of the Judgment is attached hereto as **Exhibit A**.

12.    The current amount owing on the Judgment, with post-judgment interest and after crediting amounts collected, is no less than $3,207,908.88.  This is evidenced by the Writ of Execution recently issued by the Court, a true and correct copy of which is attached hereto as **Exhibit B**.

13.    On August 21, 2014, we caused an Abstract of Judgment to be recorded in the Official Records of Orange County (the "Official Records") as Document No. 2014-000338934.  A true and correct copy of the Abstract of Judgment is attached hereto as **Exhibit C**.

14.    In 1995, Debtor and his spouse, Beata Wilson ("Beata"), acquired certain real property commonly known as 24352 Santa Clara Avenue, Dana Point, California 92629 (the "Property").  A true and correct copy of the deed by which Debtor and his spouse acquired the Property is attached hereto as **Exhibit D**.

15.    The Property's Assessor Parcel Number is 682-071-06.

16.    In September 2021, many years after we recorded our Abstract of Judgment and obtained our judgment lien encumbering the Property, Debtor recorded a deed in which Debtor purported to transfer his entire interest in the Property to Beata.  A true and correct copy of such deed is attached hereto as **Exhibit E**.

17.    Notably, the quitclaim deed is dated *March 13, 2013* (a date *prior to* entry of the Judgment), but was not recorded until *September 2021*.

18.    Thereafter, on October 5, 2022, Beata recorded a deed purporting to transfer the Property to Richmond Capital LLC ("Richmond Capital").  A true and correct copy of such deed is attached hereto as **Exhibit F**.

19.    Richmond Capital appears to be an entity owned and controlled by Debtor and/or his adult daughter, Michele Wilson.  This is confirmed by, among other things, several documents filed by Richmond Capital with the Hawaii Secretary of State, including the Annual Report attached hereto as **Exhibit G**.

20.    Thereafter, 12 days later, on October 17, 2022, Richmond Capital recorded a deed

purporting to transfer the Property to Beata. A true and correct copy of such deed is attached hereto as **Exhibit H**.

21. In connection with the below-described Sale Application, I recently obtained an appraisal of the Property from appraiser John Davidson. Mr. Davidson's appraisal report, a true and correct copy of which is attached hereto as **Exhibit I**, estimates the Property to be worth $5,350,000.00 as of the date of Mr. Davidson's appraisal. Exhibit I includes the declaration of Mr. Davidson submitted in connection with the Sale Application.

22. Before Debtor initiated this bankruptcy case, and in order to enforce the Judgment, we caused the Court to issue a Writ of Execution with respect to the Judgment. Thereafter, we delivered the Writ of Execution to the United States Marshal's Office for the Central District of California (the "Marshal") and instructed the Marshal to levy on the Property. The Marshal then levied on the Property.

23. Thereafter, on October 5, 2022, pursuant to California Code of Civil Procedure ("CCP") §§ 704.740 through 704.850, we filed our *Application for Issuance of Order to Show Cause Regarding 24352 Santa Clara Avenue, Dana Point, CA 92629* (the "Sale Application").

24. In the Sale Application, we requested that the Court enter an order allowing the Marshal to sell the Property at auction to partially satisfy the Judgment.

25. On October 25, 2022, Debtor filed his opposition to the Application ("Debtor Opposition #1"), a true and correct copy of which is attached hereto as **Exhibit J**.

26. On the same date, Beata filed her opposition to the Application along with a supporting declaration (the "Beata Opposition"), a true and correct copy of which is attached hereto as **Exhibit K**.

27. The Beata Opposition includes a copy of the purported post-nuptial agreement between Debtor and Beata (the "Post-Nuptial Agreement"), attached hereto as **Exhibit L**.

28. On January 5, 2023, Debtor filed his supplemental opposition to the Application ("Debtor Opposition #2), a true and correct copy of which is attached hereto as **Exhibit M**.

29. In other words, Debtor and Beata tried to prevent McKnew from pursuing the Property by arguing that Debtor holds no interest in the Property. To support their assertion,

Debtor and Beata relied on the Post-Nuptial Agreement.

30.     However, Debtor's and Beata's under oath testimony appears to suffer from two critical problems, as follows:

31.     First, Beata's debtor examination was taken on October 29, 2020.  At the examination, Beata was asked, point blank, whether she had any pre-nuptial or post-nuptial agreement.  She stated, flatly, "**No**". The transcript reads as follows:

> Q. All right. And do you have a prenup agreement?
> A. No.
> Q. Do you have a post –
> A. Any other questions related to this?
> Q. Do you have any post-nup agreement with Mr. Wilson?
> A. No.

32.     Before concluding that Debtor and Beata lied in their oppositions to the Application, I considered other potential explanations for the false testimony.  For example, I considered whether, perhaps, Beata did not recall the Post-Nuptial Agreement when she testified at her examination.  If so, then perhaps her false testimony was not intentional.

33.     However, that explanation appears impossible.  This is because Beata declared that she entered into the Post-Nuptial Agreement on March 6, 2002.

34.     On the second page of the Post-Nuptial Agreement, three specific properties are identified for the purpose of making clear that such properties are Beata's separate property.  One such property is identified as 27926 Finisterra, Mission Viejo, California 92692.

35.     Debtor and Beata did not buy 27926 Finisterra until *September 2, 2005*, as evidenced by the deed attached hereto as **Exhibit N**.

36.     The Sale Application was scheduled to be heard on January 19, 2023.  The day prior to the hearing, Judge Kwan posted a tentative ruling indicating his intention to allow the Marshal to sell the Property, a true and correct copy of which is attached hereto as **Exhibit O**.

37.     Debtor filed this bankruptcy shortly before the hearing on the Sale Application.

1    I declare under penalty of perjury under the laws of the State of California that the

2    foregoing is true and correct.  Executed on July 30, 2023 at San Francisco, California.

3

4    THOMAS I. MCKNEW, IV

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

26000 TOWNE CENTRE DRIVE, SUITE 130, FOOTHILL RANCH, CA 92610

A true and correct copy of the foregoing document entitled (*specify*):  OPPOSITION TO AND REQUEST FOR HEARING REGARDING MOTION TO AVOID LIEN UNDER 11 US.C. § 522(f); DECLARATION OF THOMAS I. MCKNEW, IV

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 07/30/2023_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☑ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) __07/30/2023_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) __07/30/2023_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Scott Clarkson
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 07/30/2023 | Michael Wallin | /s/ Michael Wallin |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                   **F 9013-3.1.PROOF.SERVICE**

**SERVED VIA NOTICE OF ELECTRONIC FILING:**

- **Anerio V Altman**    LakeForestBankruptcy@jubileebk.net, lakeforestpacer@gmail.com
- **Bert Briones**    bb@redhilllawgroup.com,
  helpdesk@redhilllawgroup.com;RedHillLawGroup@jubileebk.net
- **David I Brownstein**    david@brownsteinfirm.com
- **Chad L Butler**    caecf@tblaw.com
- **James Andrew Hinds**    jhinds@hindslawgroup.com;mduran@hindslawgroup.com,
  mduran@hindslawgroup.com
- **Melissa Davis Lowe**    mlowe@shulmanbastian.com, avernon@shulmanbastian.com
- **Richard A Marshack (TR)**    pkraus@marshackhays.com,
  rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

**SERVED VIA UNITED STATES MAIL:**

Shulman Bastian Friedman & Bui LLP
100 Spectrum Center Dr Ste 600
Irvine, CA 92618

Jing Wang
Kingswood Law PC
1800 E. Lambert Rd., Ste. 215
Brea, CA 92821