1   Bert Briones (SBN 237594)
    **RED HILL LAW GROUP**
2   15615 Alton Pkwy, Suite 210
    Irvine, CA 92618
3   Tel:   (888) 733-4455
    Fax:   (714) 733-4450
4   Email: bb@redhilllawgroup.com

5   Attorneys for Debtor David Allen Wilson

6

7                    **UNITED STATES BANKRUPTCY COURT**

8            **CENTRAL DISTRICT OF CALIFORNIA (SANTA ANA)**

9

10  In re:                                  Case No. 8:23-bk-10094-SC

11  DAVID ALLEN WILSON,                     Chapter 7

12                 Debtor                   **REPLY IN SUPPORT OF MOTION
                                            TO AVOID LIEN UNDER 11 U.S.C. §**
13                                          **522(f)**

14                                          **HEARING:**
                                            **Date: September 26, 2023**
15                                          **Time: 10:00 a.m.**
                                            **Ctrm: Zoom.gov**

16

17

18

19

20

21        Debtor David Allen Wilson submits this reply brief in support of his Motion to

22  Avoid Lien Under 11 U.S.C. § 522(f) ("Motion").  Debtor resided in the residence located

23  at 24352 Santa Clara Avenue, Dana Point, California on the petition date.  As explained

24  below, on the petition date and now, he owns a community property interest in the

25  residence.  Nothing in the Bankruptcy Code requires a debtor to wait for the deadline for

26  objections to exemptions to expire prior to moving to avoid a lien under § 522(f).

27  Likewise, a debtor is not required to wait for the § 523 or § 727 deadlines to expire before

28  moving to avoid a lien because *even a lien securing a nondischargeable judgment may be*

**RED HILL LAW GROUP**
15615 Alton Pkwy, Suite 210
Irvine, California 92618

1  *avoided under § 522(f).*  Debtor therefore requests that the Court avoid McKnew's lien to

2  the extent that it impairs his homestead exemption based on the value of the residence

3  provided by Debtor's independent appraisal as of the petition date, January 18, 2023—not

4  McKnew's appraisal, which was dated four months earlier, September 9, 2022.

5  I.  FACTS[1]

6  A.  Debtor and Beata's Homestead

7  The facts surrounding the residence located at 24352 Santa Clara Avenue, Dana

8  Point, California ("Residence") have always been the same.  Debtor and his wife, Beata

9  Wilson, acquired the Residence on August 19, 1995 as husband and wife as joint tenants.

10  On the petition date of January 18, 2023, Debtor and Beata occupied and resided in the

11  Residence and intended to occupy the Residence as their principal residence.  David and

12  Beata have traveled to Turkey and other foreign countries, but they continued to reside in

13  and intend the Residence to be their principal residence.

14  B.  Loan History and Reasons for Chase Lien Amount

15  The Wilsons paid approximately $1,100,000 for the Residence with a purchase

16  loan of $650,000 from Coastal Savings.

17  In 1997, the Wilsons did a cash out refinance of the loan with Coastal Savings to

18  remodel the Residence.  This loan was for approximately $1,300,000 with Home Savings.

19  In 1998, the Home Savings loan was acquired by Washington Mutual ("WaMu Loan").

20  In 2003, the Wilsons obtained a line of credit of $1,000,000 from Alliance Bank

21  secured by a second-priority lien on the Residence ("Alliance Loan").  In 2005, the line of

22  credit increased to $1,500,000, but the Wilsons never drew more than $700,000 on the

23  line of credit.

24  In 2006, the Wilsons obtained a loan with United Commercial Bank ("UCB Loan")

25  for a real estate development project.  The UCB loan was for $9,000,000 and was secured

26  by the Residence and other properties.  The Wilsons repaid UCB from the proceeds of two

27

28  [1] The following facts are based on the Declaration of David Wilson unless otherwise
stated.

REPLY RE LIEN AVOIDANCE

1    real estate projects.  UCB committed to pay off the Alliance Loan in connection with the

2    payoff but never did.

3    In 2007, Debtor and Beata refinanced the WaMu Loan with Washington Mutual

4    for a lower interest rate ("2nd WaMu Loan").  Washington Mutual failed to record the

5    subordination agreement it had obtained for the Alliance Loan  in connection with the

6    refinance.  Washington Mutual's negligence caused Alliance's second-priority lien to

7    move to first-priority on the Residence and relegated Washington Mutual to second

8    priority.

9    In 2008, Alliance, now in first priority, commenced foreclosure proceedings by

10    recording a notice of default (due to UCB's failure to pay the Alliance Loan off as

11    required in the written agreement).  The Wilsons filed a cross-complaint against Alliance

12    and UCB to cure the default.  UCB then purchased Alliance's now first-priority position

13    and took over the foreclosure—even though UCB was the party obligated to pay off the

14    Alliance loan.

15    Washington Mutual initiated litigation against UCB and the Wilsons to try to

16    obtain its first-priority position on the Residence.

17    In 2008, Washington Mutual was taken over by the FDIC as a failed bank and

18    Chase was appointed as receiver.  Chase purchased the UCB senior deed of trust (the

19    Alliance Loan in first priority) for $1,438,518, which was $740,000 (approx.) more than

20    what the Wilsons owed on the loan, thus merging the first and second priority loans.

21    Chase then placed the loan in foreclosure and increased the Wilsons' interest rate

22    to the default rate of 6%.  The Wilsons continued to make their monthly payments until

23    2011 when Chase stopped accepting them because the loan was still in litigation.  The

24    Wilsons were not aware that there was no ongoing "litigation" that would have prevented

25    the Wilsons's paying of their mortgage, and Chase's acceptance of that payment. The

26    Wilsons' believe any litigation involving a lender was resolved prior to 2011.

27    In 2017, the Wilsons and Chase attended mediation.  Chase took the position it was

28    owed approximately $3,000,000.  The Wilsons attempted to collect from their title

insurance for the errors on title.  The matter was not settled at mediation.

In October 2021, Chase sent the Wilsons loan statements indicating a loan balance of $3,921,603.12.  On May 8, 2023, Chase obtained relief from the automatic stay.  In its relief from stay motion, Chase alleged it was owed $4,123,447.68.  (Docket No. 34.)  The Wilsons are still negotiating with Chase to resolve the payoff amount and bring the loan into good standing.

C.  <u>Title History to the Residence</u>

In 2002, Debtor and Beata entered a post-nuptial agreement that attempted to transmute the Residence from Debtor and Beata's community property or joint tenancy property to Beata's separate property in the event of an eventual divorce.[2]  They did not record the post-nuptial on title to the Residence.

In 2013, Debtor executed a quitclaim deed of the Residence to Beata.  This quitclaim was not recorded until 2021.  Contrary to McKnew's assertion that the recording was delayed to somehow prevent McKnew from executing on the Residence, the delay was because Debtor and Beata were attempting to refinance and/or obtain a loan modification for several years.  The deed was prepared because Beata had a significantly higher FICA score than Debtor.  The loan brokers and lenders that Debtor and Beata were working with recommended that Beata alone apply for a refinance or loan modification, which would require that Beata's name be the sole name on title.  The quitclaim was not immediately recorded because Debtor and Beata did not successfully modify the loan (due to the litigation with the various lenders) until their fourth attempt.

In September 2022, Beata transferred title of the Residence to Richmond Capital LLC.  Richmond Capital is a limited liability company.  Debtor's daughter, Michelle Wilson, and her husband, Alpie Atabay were the sole members of Richmond.  The

---

[2] The post-nuptial was originally created in 2002 but the Word version of the post-nuptial was modified by Debtor and Beata after Beata acquired 27926 Finisterra in 2005 to add the Finisterra property.  The post-nuptial was an agreement between Debtor and Beata and not prepared by a lawyer.  They did not update the original date of the agreement when Beata acquired Finisterra because they did not intend to create a new agreement but simply add the new property to their existing agreement, and they did not even consider whether the date in the opening paragraph should be changed or not.

1  purpose of the transfer was to attempt to raise capital to satisfy a potential settlement

2  agreement with Chase to bring the Chase loan current.  Debtor and Beata were negotiating

3  with family members to contribute the capital to pay Chase, and in exchange were

4  offering membership interests in the limited liability company to capital contributors.

5  This plan ultimately did not come to fruition.  Thus, days after the transfer from Beata to

6  Richmond, Richmond transferred the Residence back to Beata.  No money exchanged

7  hands in connection with these transfers as the purpose of the transfer—to raise capital to

8  pay Chase—never transpired and the transfer was unwound.

9       D. <u>First Bankruptcy</u>

10      In August 2008, Debtor filed a voluntary Chapter 7 case, case number 2:12-bk-

11  16195-RK.

12      McKnew filed a nondischargeability action against Debtor in connection with the

13  2008 bankruptcy case and prevailed.  After McKnew obtained a judgment and recorded

14  and abstract of judgment on the Residence, McKnew sought an order to sell the

15  Residence.  Misunderstanding the effect of an unrecorded post-nuptial agreement, Beata

16  argued that the Residence was Beata's separate property based on the post-nuptial.

17  Honorable Judge Robert Kwan (Ret.) issued a tentative ruling[3] that the post-nuptial did

18  not meet the high standards to transmute community property to separate property and

19  was not valid as to third parties because it was not recorded.

20      Judge Kwas stated that "as of 1/17/2023":

21      the property is community property of judgment debtor David Wilson and

22      the judgment debtor's spouse, Beata Wilson, as indicated by the grant deed

23      from 1995 in which they acquired the property. Although the property was

24      acquired by Mr. and Mrs. Wilson as joint tenants, the property was

25      acquired during marriage after 1975, and the community property

26      presumption under California Family Code § 760 applies, and the property

27

---

28  [3] Debtor requests that the Court take judicial notice of Judge Kwan's tentative ruling
attached as Exhibit 1.

1    is presumed to be community property. *In re Brace*, 9 Cal.5th 903, 938

2    (2020).

3

4    Beata Wilson claims that the property is her separate property based on a

5    transmutation of the property through a post-nuptial agreement in 2002.

6    David Wilson in his opposition to the amended sale motion asserts that he

7    is not an owner of the property, and thus, it appears that he does not claim a

8    homestead exemption. However, Beata Wilson's claim that the property is

9    her separate property lacks merit because there is no evidence showing that

10    the alleged property transmutation is effective against third parties, such as

11    the judgment creditors based on their abstract of judgment recorded on

12    August 21, 2014, which requires that such transmutation be recorded

13    pursuant to California Family Code § 852.

14

15    As community property owned by the judgment debtor, the entire property

16    may be sold as the judgment debtor's interest. However, Beata Wilson as

17    the judgment debtor's spouse may claim a homestead exemption in the

18    property as her dwelling pursuant to California Code of Civil Procedure

19    §704.730(a)(1). Since there is a current declaration of exemption as Beata

20    Wilson recorded a declaration of homestead in October 2022, the judgment

21    creditors have the burden of proving that the property is not a homestead.

22    California Code of Civil Procedure § 704.780(a)(1).

23    On January 18, 2023, Debtor filed a voluntary petition under Chapter 7

24    commencing the action presently before this Court.  Judge Kwan vacated the hearing on

25    the motion to sell.  On June 28, 2023, Debtor filed the present Motion under 11 U.S.C. §

26    522(f) to avoid McKnew's lien on the Residence.

27    Debtor and Beata did not intend to mislead anyone about the ownership of the

28    Residence.  Beata believed that the Residence was her separate property based on the

post-nuptial, but as Judge Kwan explained, her understanding was incorrect.  The Residence was and continues to be Debtor and Beata's community property.

II.   <u>LEGAL AUTHORITY</u>

A. <u>The Motion is not premature.</u>

Nothing in the bankruptcy code requires a debtor to wait to avoid a lien under § 522(f) until the deadline to object to objections has expired.  Indeed, in a Chapter 13 bankruptcy case, a debtor is required under the Local Rules to file a 522(f) motion within 28 days of commencement of the case, regardless of whether the objection deadline has expired or not.  (LBR, 3015-1(b)(7); *In re Heretakis*, 293 B.R. 82 (Bankr. D.Mass. 2003)(creditor opposed 522(f) relief by objecting to homestead exemption in opposition to the 522(f) motion, which was filed before the 30 day exemption objection deadline).  In any Chapter, a creditor always bears the burden of objecting to an exemption, and in connection with a 522(f) motion can do so by motion before the exemption deadline has passed or after through the opposition to 522(f) relief.  *In re Carpenter*, 559 B.R. 551 (Bankr. D.RI 2016).  Other courts have held that a debtor need not even claim an exemption on Schedule C to argue the exemption impairs a homestead an obtain § 522(f) relief.  *Botkin v. DuPont Community Credit Union*, 650 F.3d 396 (4th Cir.  2011).  The *Botkin* court explained:

> [Creditor] argues that allowing avoidance of a lien under § 522(f) before an exemption has actually been claimed would deny creditors the right to object. But that is simply not true. Creditors are free to raise exemption issues during litigation of a § 522(f) lien-avoidance issue.
>
> . . .
>
> [Creditor] also suggests that unless a debtor must claim an exemption before seeking to avoid a lien that purportedly impairs that exemption, the bankruptcy courts will be unable to determine the amount of the exemption at issue or whether the exemption is impaired. That is also incorrect. A debtor's entitlement to § 522(f) avoidance already requires the debtor to

1    prove the amount of the exemption he would have in the absence of the

2    lien. An actual claim of the exemption is in no way necessary for the

3    district court to apply § 522(f)(2)'s mathematical formula or otherwise

4    evaluate the § 522(f) motion.

5    *Id.* at 400-01.  Likewise, a court can adjudicate whether a debtor has proven an allowable

6    exemption, particularly when raised as a defense by a lien creditor in connection with a §

7    522(f) motion, even if not all creditors or the trustee have filed their potential objections to

8    the exemption.

9         B.  Debtor has an interest in the Residence.

10        On January 17, 2023, Judge Kwan issued a tentative ruling that the Debtor had a

11   community property interest in the Residence.  While Judge Kwan did not have an

12   opportunity to enter a final order to that effect, the logic of his tentative ruling is

13   persuasive and applicable to ownership of the property.  Judge Kwans's tentative ruling

14   was entered just one day prior to the present bankruptcy case.

15        Property acquired by either spouse during marriage is presumed to be community

16   property.  *In re Brace*, 321, 9 Cal.5th 903, 935 (2020).  Property held by a married couple

17   in joint tenancy is community property.  Property can only be transmuted from

18   community property to one spouse's separate property by a writing with an "express

19   declaration" that contains language that expressly states that the characterization of the

20   property is being changed from community property to separate property.  *In re Brace*, 9

21   Cal.5th 903, 935 (2020).

22        In *In re Marriage of Deluca*, the court explained that a "quitclaim deed and spousal

23   acknowledgement regarding the [] property do not satisfy the transmutation requirements

24   of section 852 and related case law because neither document contains language expressly

25   stating that the characterization or ownership of the []property was being changed from

26   community property to separate property."  *In re Marriage of Deluca*, 254 Cal.Rptr.3d

27   418, 437 (Cal.App. 4 Dist. 2019).  The deed in *Deluca* stated "for a valuable

28   consideration, receipt of which is hereby acknowledged, ROSALINDA DE LUCA,

1  spouse of [George does] hereby REMISE, RELEASE AND FOREVER QUITCLAIM to

2  GEORGE E. DE LUCA, a married man as his sole and separate property the [Florida

3  Street property.]" and "[Rosalinda] claims no ownership rights in the [Florida Street

4  property.]"  Because there was no express reference in either document to a community

5  property interest in the property or any change in the character or ownership of the

6  property, the parties did not effectively transmute the wife's community property interest

7  in the property.  *Id.*

8          In addition, for a transmutation of community property to separate property to be

9  effective as to third parties, it must be recorded.  Cal. Fam. Code § 852 ("A transmutation

10 of real property is not effective as to third parties without notice thereof unless recorded.")

11         Here, Debtor and his wife acquired the Residence as joint tenants.  Because they

12 were married, they therefore acquired it as community property.  California Family Code

13 § 760; *In re Brace*, 9 Cal.5th 903, 938 (2020).

14         In 2002, they executed a post-nuptial agreement that stated as follows with respect

15 to the Residence:

16         **Separate property.** With respect to certain property acquired during the marriage,

17         any property acquired and given to Second Party [Debtor's wife] individually

18         during marriage will be treated as such Party's non-marital, separate property and

19         individual property, including any increase in the value relating to the property, as

20         listed below:

21         . . .

22         2. 24352 Santa Clara Ave., Dana Point, CA 92629

23         The language of the post-nuptial agreement does not contain an express declaration

24 that the characterization of the Residence was being changed from *community property* to

25 separate property.  The post-nuptial only states, somewhat ambiguously, that the property

26 will be treated as separate and individual property with no mention of a change from

27 community property.  Judge Kwan agreed.

28         In 2013, Debtor executed a quitclaim deed to his wife, attempting to convey it to

- 9 -

1  her as separate property.  Again, the quitclaim does not contain the requirements to

2  effectively transmute the Residence because there is no express reference in the quitclaim

3  to a community property interest in the property or any change in the character or

4  ownership of the property.  Thus, Judge Kwan correctly decided that Debtor and Beata's

5  efforts to transmute the Residence from community property to Beata's separate property

6  were ineffective.

7      Likewise, the transfer from Beata to Richmond Capital did not affect Debtor's

8  community property interest.  In the Ninth Circuit, a transfer from a Debtor to a limited

9  liability company does not necessarily destroy the property's status as a homestead.

10     *In re Caldwell,* 545 B.R. 605 (2016), the debtor and his spouse purchased a

11 residence in 1994.  They continuously resided in the residence from that date through their

12 bankruptcy.  They made the mortgage payments, paid taxes, maintained insurance, and

13 assumed other responsibilities of owners of the residence.  *Id.*, 607.  From 1994 to their

14 bankruptcy, they transferred title seven times to and from their family trust and a limited

15 liability company.  At the time of the petition, the residence was held in the name of the

16 family trust.  The chapter 7 trustee objected to the debtors' homestead exemption arguing

17 that § 522(p) limited the debtors to an exemption of $155,675 because the residence was

18 transferred to them within the 1215-day period of § 522(p).

19     The BAP held that "the interest Debtor retained in the Property after the transfer of

20 legal title to the LLC was more than a general interest or the mere right to exclusive

21 possession."  The debtor "retained all the indicia of ownership by his possession and use

22 of the Property along with the payment of the mortgage, taxes, and insurance."  "[T]he

23 "equity" in the Property which is subject to the exemption was the result of payments

24 made by Debtor over the years."  The BAP concluded "that Debtor was not divested of all

25 interests in the Property by the transfer of legal title to the Property to the LLC," and

26 "Debtor's homestead rights in the Property before and after the transfers of title remained

27 unchanged."  *In re Caldwell*, 545 B.R. 605, 612 (9th Cir.BAP (Nev.), 2016).

28     Like the Debtors in *Caldwell*, Debtor and Beata retained all of the indicia of

- 10 -

1   ownership and use of the Residence since the initial purchase in 1995.  They made the

2   mortgage payments, litigated with the various lenders to attempt to clear title and bring

3   the loans current.  They paid taxes and insurance.  In addition, Debtor and Beata

4   transferred the Residence and then promptly unwound the transfer when it became

5   apparent that family would not provide the money necessary to settle with Chase—which

6   would have aided them in their effort to keep *their Residence.*  Debtor and Beata retained

7   all of the indicia of ownership by possession and use and were not divested of all (or any)

8   interests in the Residence by the transfer of title to Richmond and back.  Thus, Debtor and

9   Beata are and have been the owners of the Residence since they acquired it in 1995.

10          C.   The Residence is Debtor's homestead.

11          Under California law, a homestead is defined as:

12          "Homestead" means the principal dwelling (1) in which the judgment

13          debtor or judgment debtor's spouse resided on the date the judgment

14          creditor's lien attached to the dwelling, and (2) in which the judgment

15          debtor or the judgment debtor's spouse resided continuously thereafter until

16          the date of the court determination that the dwelling is a homestead.

17   Cal. Code Civ. Proc., § 704.710(c).

18          Residency for purposes of the homestead requires that the debtor physically

19   occupy the property and intend to occupy the property.  Temporary absence is permitted

20   so long as the debtor intends to occupy the property as a principal dwelling.  *In re*

21   *Gilman*, 887 F. 3d 956, 966 (9th Cir. 2018; *In re Bruton*, 167 B.R. 923, 926 (Bankr. SD.

22   Cal. 1994).

23          Here, on the petition date of January 18, 2023, Debtor and Beata and their

24   belongings physically occupied the Residence as their principal dwelling.  Their

25   furniture, clothing, and other personal belonging were and are located in the Residence.

26   Their vehicles and drivers' licenses are registered at the Residence.  They pay the

27   mortgage on the residence, despite the dispute with Chase.  They continue to negotiate

28   with Chase to resolve the dispute over the loan amount to ensure that they can continue to

1  live in their Residence  They pay the property taxes and property insurance.   They travel

2  but always return to the Residence.

3      D.  Section 522(o) does not apply.

4      Section 522(o) provides:

5          For purposes of subsection (b)(3)(A), and notwithstanding subsection (a),

6      the value of an interest in--

7          (1) real or personal property that the debtor or a dependent of the debtor

8      uses as a residence;

9          . . .

10          shall be reduced to the extent that such value is attributable to any portion

11      of any property that the debtor disposed of in the 10-year period ending on the

12      date of the filing of the petition with the intent to hinder, delay, or defraud a

13      creditor and that the debtor could not exempt, or that portion that the debtor could

14      not exempt, under subsection (b), if on such date the debtor had held the property

15      so disposed of.

16      Debtor never disposed of the Residence with the intent to hinder, delay or defraud

17  a creditor.  The post-nuptial was executed based on Debtor and Beata's agreement that

18  Beata should receive the Residence in the event of the parties' divorce—which has not

19  happened; they are married with no intention of separating or divorcing.  Debtor and

20  Beata's attempt to transfer title only (not beneficial interest) to the Residence to Beata as

21  her separate property by quitclaim was done because Beata's FICA score was higher and

22  Debtor and Beata were informed by loan brokers that they could obtain a better interest

23  rate on their refinance if the Residence was solely titled in Beata's name.  They did not

24  intend to divest Debtor of his beneficial community property homestead.

25      Debtor and Beata transferred the Residence to Richmond Capital LLC to resolve

26  the loan issues and litigation with the various lenders explained above.  Had family

27  members followed through with discussions to contribute capital to settle with Chase,

28  Debtor and Beata would have given them membership interest in Richmond.  The family

- 12 -

1   members, however, never contributed capital, no agreement was reached, and the

2   Residence was deeded back to Beata.

3       E. <u>The Court can avoid a lien securing a nondischargeability judgment.</u>

4       A valid homestead exemption exempts property from prepetition claims, including

5   claims that are nondischargeable under § 523(a)(2).  *Walters v. U.S. Nat. Bank of*

6   *Johnstown*, 879 F.2d 95, 96–98 (C.A.3 (Pa.),1989).  In *Walters v. U.S. Nat. Bank of*

7   *Johnstown*, the court explained:

8           [S]ection 522(c) contains no cross-reference to section 523(a)(2)

9       dealing with fraud or other intentional torts. Thus Congress was well aware

10      of the relationship between the two sections, and carefully excepted from

11      the exemption section some, but not all, non-dischargeable debts.

12          The bank has referred us to no legislative history, nor have we found

13      any, suggesting that section 523 was intended, generally, to trump section

14      522. Indeed, had that been the intention the exceptions in section 522(c)

15      would have been redundant. Referring to that section the identical House

16      and Senate Reports read:

17          Subsection (c) insulates exempt property from prepetition claims

18      other than tax claims (whether or not dischargeable), and other than

19      alimony, maintenance, or support claims that are excepted from discharge.

20          . . .

21          The drafters of the exemption section thus were aware that exempt

22      property would be protected against some, but not all, non-dischargeable

23      debts.

24  *Walters v. U.S. Nat. Bank of Johnstown*, 879 F.2d 95, 96–98 (3rd Cir. 1989); *see also*

25  *Battin v. Bayside Financial Corp.*, 2004 WL 2307102, at *4 (Cal.App. 4 Dist.

26  2004)("The trial court . . . properly applied *Walters v. U.S. Nat. Bank of Johnstown*, [] as

27  did the court that affirmed the Homestead Exemption Order. *Walters* compels the

28  conclusion that the [] property was exempt with respect to [debtor's] debt to [creditor],

1    even though the debt was nondischargeable.")

2    McKnew has a nondischargeable judgment against Debtor under § 523(a)(2)(A).

3    While McKnew's claim is nondischargeable, Debtor is entitled to use § 522(f) to protect

4    his homestead from enforcement by McKnew.

5    F.  The § 727 Deadline has expired and is irrelevant to lien avoidance.

6    A homestead exemption and the right to avoid a lien impairing the homestead

7    exemption is unaffected by a nondischargeabilty judgment. *In re Pipes*, 78 B.R. 981, 983

8    (Bankr. W.D.Mo. 1987)[4]; *In re Mulholland*, 2012 WL 601784, at *2 (Bankr. D.N.M.

9    2012).  Morevoer, the deadline for any party to file a § 727 action expired on August 31,

10   2023.  McKnew's arguments regarding McKnew's § 727 judgment or a potential future §

11   727 action affecting lien avoidance are therefore moot.

12   A.  The Debtor's appraisal is more accurate.

13   The Debtor obtained an appraisal from an independent appraiser regularly

14   employed by his attorney, Bert Briones.  Debtor's appraisal was completed January 27,

15   2023 and valued the Residence as of the Petition Date of January 18, 2023.  See Ex. 6 to

16   the Motion.  In contrast, McKnew's appraisal was dated in September 2023.  All else

17   equal, Debtor's appraisal is more relevant to the value of the Residence on the petition

18   date.  To the extent that the Court has any questions of Debtor's appraisal, Debtor agrees

19   to an evidentiary hearing to present evidence and testimony regarding the Residence's

20   value.

21

22   [4] In *In re Pipes*, the bankruptcy court explained: "[I]seems clear that although a judgment
23   may be based on fraud or punitive damages or any of the other causes incorporated in
     Section 523 or Section 727 to create nondischargeability, state exemptions from execution
24   and levy are still available to the defendant. It matters not upon what cause of action the
     judgment arose, (excluding maintenance and child support) the defendant's state
25   exemptions are still available. The Court, therefore, concludes that the ability to avoid a
26   lien or to redeem for present cash value is not dependent upon dischargeability."; *In re
     Mulholland*, 2012 WL 601784, at *2 (Bankr. D.N.M. 2012)("11 U.S.C. § 522(f) does not
27   include a requirement that the debtor receive a discharge in order to obtain lien
     avoidance").

28

III.    <u>CONCLUSION</u>

Debtor owns a community property interest in the Residence, which he resides in as his primary residence and is subject to a valid homestead exemption.  The McKnew lien impairs the homestead exemption.  After accounting for the Chase lien of $4,060,396 against a value of the residence at $4,450,000, there is only $389,604 in equity which is entirely protected by a homestead exemption of $678,378.  The Court should therefore grant this Motion and avoid McKnew's lien in its entirety.

Dated: September 18, 2023                    Respectfully submitted,
                                             **RED HILL LAW GROUP**


                                             By:   */s/ Bert Briones*
                                             Bert Briones
                                             Attorneys for Debtor David Allen Wilson

## DECLARATION OF DAVID ALLEN WILSON

I, DAVID ALLEN WILSON, declare:

1.      I am an individual over the age of 18.

2.      I know the following facts to be true of my own personal knowledge unless otherwise stated.

3.      My wife, Beata Wilson, and I acquired 24352 Santa Clara Avenue, Dana Point, California ("Residence") on August 19, 1995 as husband and wife as joint tenants.

4.      On January 18, 2023, I filed a voluntary case under Chapter 7 of the Bankruptcy Code.

5.      On January 18, 2023, Beata and I occupied and resided in the Residence and intended to occupy the Residence as our principal residence.  Beata and I have traveled to Turkey and other foreign countries, but we continued to reside in and intend the Residence to be our principal residence.

Loan History and Reasons for Chase Lien Amount

6.      Beata and I paid approximately $1,100,000 for the Residence with a purchase loan of $650,000 from Coastal Savings.

7.      In 1997, we did a cash out refinance of the loan with Coastal Savings to remodel the Residence.  This loan was for approximately $1,300,000 with Home Savings.

8.      In 1998, the Home Savings loan was acquired by Washington Mutual ("WaMu Loan").  The WaMu Loan was secured by a first-priority senior lien on our Residence.

9.      In 2003, we obtained a line of credit of $1,000,000 from Alliance Bank secured by the Residence ("Alliance Loan").  The Alliance Loan was secured by a second-priority lien on the Residence.  In 2005, the line of credit increased to $1,500,000, but we never drew more than $700,000 on the line of credit.

10.     In 2006, Beata and I obtained a loan with United Commercial Bank ("UCB Loan") for a real estate development project.  The UCB loan was for $9,000,000 and was secured by the Residence (a third-priority lien) and other properties.  We repaid UCB

1   from the proceeds of two real estate projects.  UCB committed to pay off the Alliance

2   Loan in connection with the payoff but never did.

3       11.      In 2007, Beata and I refinanced the WaMu Loan with Washington Mutual

4   for a lower interest rate ("2nd WaMu Loan").  Washington Mutual failed to record the

5   subordination agreement it had obtained for the Alliance Loan (which was in second

6   priority but should have been paid off by UCB) in connection with the refinance.

7   Washington Mutual's negligence caused Alliance's second-priority lien to move to first-

8   priority and relegated Washington Mutual to second priority.

9       12.      In 2008, Alliance, now in first priority, commenced foreclosure proceedings

10  by recording a notice of default (due to UCB's failure to pay the Alliance Loan off as

11  required in the written agreement).  Beata and I filed a cross-complaint against Alliance

12  and UCB to cure the default.  UCB then purchased Alliance's now first-priority position

13  and took over the foreclosure—even though UCB was the party obligated to pay off the

14  Alliance Loan.

15      13.      Washington Mutual initiated litigation against UCB and the Beata and me to

16  try to obtain the first-priority position on the Residence that it would have had, if it had

17  recorded the subordination agreement signed by Alliance.

18      14.      In 2008, Washington Mutual was taken over by the FDIC as a failed bank

19  and Chase was appointed as receiver.  Chase purchased the UCB senior deed of trust

20  (originally the Alliance Loan in first priority) for $1,438,518, which was $740,000

21  (approx.) more than what we owed on the loan, thus merging the first and second priority

22  loans.

23      15.      Chase then placed the loan in foreclosure and increased our interest rate to

24  the default rate of 6%.  Beata and I continued to make our monthly payments until 2011

25  when Chase stopped accepting them because the loan was still in litigation.  To our

26  knowledge, in 2011 there was no ongoing "litigation" that would have prevented paying

27  of our mortgage, and Chase's acceptance of that payment.  I believe any litigation

28  involving a lender was resolved prior to 2011.

REPLY RE LIEN AVOIDANCE

16.    In 2017, Chase, Beata and I attended mediation. Chase took the position it was owed approximately $3,000,000. Beata and I attempted to collect from our title insurance for the errors on title. The matter was not settled at mediation.

17.    In October 2021, Chase sent us loan statements indicating a loan balance of $3,921,603.12.

18.    On May 8, 2023, Chase obtained relief from the automatic stay. In its relief from stay motion, Chase alleged it was owed $4,123,447.68. (Docket No. 34.)

19.    We are still negotiating with Chase to resolve the payoff amount and bring the loan into good standing.

Title History to the Residence

20.    In 2002, Beata and I entered a post-nuptial agreement that attempted to transmute the Residence to Beata's separate property in the event of an eventual divorce.

21.    We originally created the post-nuptial in 2002. We modified the Word version of the post-nuptial after Beata acquired 27926 Finisterra in 2005 to add the Finisterra property. Since the post-nuptial was an agreement between Beata and me and not prepared by a lawyer, we did not update the original date of the agreement when Beata acquired Finisterra. We simply re-printed it with the old date and the newly added property. We did not intend to create a new agreement but simply add the new property to our existing agreement. I did not even consider whether the date in the opening paragraph should be changed or not.

22.     We did not record the post-nuptial on title to the Residence.

23.    In 2013, I executed a quitclaim deed of the Residence to Beata. This quitclaim was not recorded until 2021.

24.    Contrary to McKnew's assertion that the recording was delayed to somehow prevent McKnew from executing on the Residence, the delay was because Beata and I were attempting to refinance and/or obtain a loan modification for several years. The deed was prepared because Beata had a significantly higher FICA score than me. The loan brokers and lenders that Beata and I were working with recommended that Beata

1    alone apply for a refinance or loan modification, which would require that Beata's name

2    be the sole name on title.  The quitclaim was not immediately recorded because Beata and

3    I did not successfully modify the loan (due to the disputes with the various lenders) until

4    our fourth attempt.

5         25.    In September 2022, Beata transferred title of the Residence to Richmond

6    Capital LLC.  Richmond Capital is a limited liability company.  My daughter, Michelle

7    Wilson, and her husband, Alpie Atabay, are the sole members.  The purpose of the

8    transfer was to attempt to raise capital to satisfy a potential settlement agreement with

9    Chase to bring the Chase loan current.  Beata and I were negotiating with family members

10   to contribute the capital to pay Chase, and in exchange were offering membership

11   interests in the limited liability company to capital contributors.  This plan ultimately did

12   not come to fruition.  Thus, shortly after the transfer from Beata to Richmond, Richmond

13   transferred the Residence back to Beata.  No money exchanged hands in connection with

14   these transfers as the purpose of the transfer—to raise capital to pay Chase—never

15   transpired and the transfer was unwound.

16   First Bankruptcy

17        26.    In August 2008, I filed a voluntary Chapter 7 case, case number 2:12-bk-

18   16195-RK.

19        27.    McKnew filed a nondischargeability action against me in connection with

20   the 2008 bankruptcy case and prevailed.  After McKnew obtained a judgment and

21   recorded and abstract of judgment on the Residence, McKnew sought an order to sell the

22   Residence.

23        28.    The Honorable Judge Robert Kwan (Ret.) issued a tentative ruling that the

24   post-nuptial did not meet the high standards to transmute community property to separate

25   property and was not valid as to third parties because it was not recorded.

26

27

28

29.     On January 18, 2023, I filed the voluntary petition under Chapter 7 commencing the action presently before this Court.  Judge Kwan vacated the hearing on the motion to sell.

30.     On June 28, 2023, I filed the present Motion under 11 U.S.C. § 522(f) to avoid McKnew's lien on the Residence.

31.     Beata and I did not intend to mislead anyone about the ownership of the Residence.  I am informed that Beata believed that the Residence was her separate property based on the post-nuptial, but as Judge Kwan explained, her understanding was incorrect.  The Residence was and continues to be Beata and my community property.

32.     Here, on the petition date of January 18, 2023, Beata and I and our belongings physically occupied the Residence as our principal dwelling.  Our furniture, clothing, and other personal belongings were and are located in the Residence.  Our vehicles and drivers' licenses are registered at the Residence.  We pay the mortgage on the residence, despite the dispute with Chase.  We continue to negotiate with Chase to resolve the dispute over the loan amount to ensure that we can continue to live in our Residence We pay the property taxes and property insurance.   We travel but always return to the Residence.

33.     I never disposed of the Residence with the intent to hinder, delay or defraud a creditor.  The post-nuptial was executed based on Beata's and my agreement that Beata should receive the Residence in the event of a divorce—which has not happened; we are married with no intention of separating or divorcing.

34.      I obtained an appraisal from an independent appraiser who I am informed is regularly employed by my attorney, Bert Briones.  The appraisal was completed January 27, 2023 and valued the Residence as of the Petition Date of January 18, 2023.  See Ex. 6 to the Motion.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

1  Dated: September 18, 2023 at Orange County , California .

2

3  _____

4  DAVID ALLEN WILSON

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY RE LIEN AVOIDANCE

# EXHIBIT "1"

# EXHIBIT "1"

**United States Bankruptcy Court**
**Central District of California**
**Los Angeles**
**Robert Kwan, Presiding**
**Courtroom 1675 Calendar**

---

**Thursday, January 19, 2023**                                              **Hearing Room        1675**

---

<u>1:00 PM</u>
**2:00-00000**                                                                                          **Chapter**

   **#0.00**   During the COVID-19 pandemic, and until further notice by the Court, or as otherwise ordered
   by the Court, appearances for matters heard by Judge Kwan in Courtroom 1675 may be made
   in-person, by video through Zoom for Government (ZoomGov), or by telephone through
   ZoomGov. If appearing through ZoomGov, hearing participants and other parties in interest may
   connect to the video and audio feeds, free of charge, using the connection information
   provided below.


   As a hearing participant, you are free to choose any of these options, except that evidentiary
   hearings/trials must be in person in the courtroom (unless otherwise ordered).  You do not
   need to call Chambers for advance approval or notice.


   If you choose to appear in person, you must comply with all applicable Centers for Disease
   Control and Prevention (CDC) guidelines regarding the wearing of face coverings and physical
   distancing inside and outside of the courtroom. Pursuant to the Court's General Order 21-05,
   where an in-person matter is held in a courtroom, all participants are to observe all safety
   protocols posted and announced in the courtroom, and Judge Kwan as the presiding judge will
   determine the protocols in effect in his assigned courtroom consistent with guidance from the
   CDC.  By order of Judge Kwan, all persons that choose to appear in person must wear a face
   covering or mask covering their nose and mouth, and must observe physical distancing inside
   and outside of the courtroom. However, with permission of Judge Kwan, a witness testifying on
   the witness stand may remove his or her face covering while testifying in order for the court
   and the parties to observe the witness's demeanor. You should not enter the courthouse when
   feeling unwell, if you have tested positive for COVID-19, or if you fall within the quarantine
   recommendations after having come into close contract with someone who has COVID 19.


   ZoomGov logon information for all matters on today's hearing calendar:

   **Video/audio web address:  https://cacb.zoomgov.com/j/1604027931**


   **ZoomGov meeting number: 160 402 7931**

---

# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Robert Kwan, Presiding
### Courtroom 1675 Calendar

**Thursday, January 19, 2023**                                                                          **Hearing Room    1675**

<u>1:00 PM</u>
**CONT...**                                                                                                                    **Chapter**

**Password:**          **812726**

**Telephone conference lines:**          **1 (669) 254 5252 or 1 (646) 828 7666**

Please connect at least 5 minutes before the start of your hearing, and wait with your microphone muted until your matter is called.

Zoomgov hearing etiquette: (a) wait until the judge calls on you, so everyone is not talking at once; (b) when you first speak, state your name and, if you are an attorney, whom you represent (do not make your argument until asked to do so); (c) when you make your argument, please pause from time to time so that, for example, the judge can ask a question or anyone else can make an objection; (d) if the judge does not see that you want to speak, or forgets to call on you, please say so when other parties have finished speaking (do not send a "chat" message, which the judge might not see); and (e) please let the judge know if he mispronounces your name or uses the wrong pronoun.

Docket          0

**Tentative Ruling:**
- NONE LISTED -

**United States Bankruptcy Court**
**Central District of California**
**Los Angeles**
**Robert Kwan, Presiding**
**Courtroom 1675 Calendar**

**Thursday, January 19, 2023**                                         **Hearing Room    1675**

<u>1:00 PM</u>
**2:12-16195   David Alan Wilson**                                         **Chapter 7**
Adv#: 2:12-01317       McKnew, Thomas I. IV et al v. Wilson

> **#1.00**      EVIDENTIARY HEARING RE: Order to show cause on application for order for sale
> of real property located at 24352 Santa Clara Avenue, Dana Point, CA 92629
> fr. 1/6/23
>
>                            Docket       739

**Tentative Ruling:**

Updated tentative ruling as of 1/19/23.  Interested party Beata Wilson filed a
notice of stay of proceedings today based on a notice of filing of a new
Chapter 7 bankruptcy case by the judgment debtor, David Wilson, yesterday,
which is now pending in the Santa Ana Division of the court.  It appears that
the pending proceedings in this case are stayed.  However, the parties should
appear to confirm the status of the case and to discuss scheduling of a further
sfatus conference in light of the automatic stay in the judgment debtor's new
bankruptcy case.

Further supplemental tentative ruling as of 1/18/23.  Pursuant to stipulation
and order entered today, parties, counsel and witnesses may appear for the
hearing remotely on Zoom for Government.

Supplemental tentative ruling as of 1/17/23.  The evidence indicates that the
property is community property of judgment debtor David Wilson and the
judgment debtor's spouse, Beata Wilson, as indicated by the grant deed from
1995 in which they acquired the property.  Although the property was acquired
by Mr. and Mrs. Wilson as joint tenants, the property was acquired during
marriage after 1975, and the community property presumption under
California Family Code § 760 applies, and the property is presumed to be
community property.  In re Brace, 9 Cal.5th 903, 938 (2020).

Beata Wilson claims that the property is her separate property based on a
transmutation of the property through a post-nuptial agreement in 2002.
David Wilson in his opposition to the amended sale motion asserts that he is
not an owner of the property, and thus, it appears that he does not claim a
homestead exemption.  However, Beata Wilson's claim that the property is

# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Robert Kwan, Presiding
### Courtroom 1675 Calendar

---

**Thursday, January 19, 2023**                                                                                 **Hearing Room      1675**

---

**1:00 PM**

**CONT...        David Alan Wilson**                                                                                              **Chapter 7**

her separate property lacks merit because there is no evidence showing that the alleged property transmutation is effective against third parties, such as the judgment creditors based on their abstract of judgment recorded on August 21, 2014, which requires that such transmutation be recorded pursuant to California Family Code § 852.

As community property owned by the judgment debtor, the entire property may be sold as the judgment debtor's interest.  However, Beata Wilson as the judgment debtor's spouse may claim a homestead exemption in the property as her dwelling pursuant to California Code of Civil Procedure §704.730(a)(1). Since there is a current declaration of exemtion as Beata Wilson recorded a declaration of homestead in October 2022, the judgment creditors have the burden of proving that the property is not a homestead.  California Code of Civil Procedure § 704.780(a)(1).

At the hearing, the court must determine the amount of the homestead exemption, the fair market value of the dwelling, and issue an order for sale unless the court determines that sale is not likely to produce a bid high enough to satisfy any part of the creditors' judgment.  California Code of Civil Procedure §704.780(b).  That is, the court will not order a sale of the dwelling until the sale will produce a bid greater than the combined amount of the homestead exemption and all senior liens and encumbrances and 90% of the fair market value of the property.  California Code of Civil Procedure § 704.780(b), 704.800(a) and (b).; see also, Rourke v. Troy, 17 Cal.App.4th 880, 885-886 (1993)(the liens and encumbrances that must be satisfied include only those senior to the judgment lien).  The judgment creditors' assertion of a minimum bid of $0.00 is contrary to statute based on Beata Wilson's exemption claim of at least $75,000 and Chase Bank's senior lien of at least $4,097,967.96 based on the judgment creditors' computations.

The amount of homestead exemption that Beata Wilson may assert as to the judgment creditors' lien is determined as of the date their earlier judgment lien was recorded pursuant to California Code of Civil Procedure §§703.050 and 703.100, which was on August 21, 2014, and thus, a post-2021 exemption claim of $600,000 is not appropriate.  The applicable exemption amounts that Beata Wilson may claim as of 2014 would be a minimum of $75,000 for herself, $100,000 for her family unit (which may include herself and her

# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Robert Kwan, Presiding
### Courtroom 1675 Calendar

**Thursday, January 19, 2023**                                              **Hearing Room      1675**

1:00 PM
**CONT...      David Alan Wilson**                                                            **Chapter 7**

spouse) or $175,000 based as an elderly, disabled or low income person. The record is unclear as to the basis for her exemption claim of $175,000. Beata Wilson will need to prove up entitlement to a higher exemption amount pursuant to pre-2021 California Code of Civil Procedure §704.730..

The parties disagree on the fair market value of the property.  The judgment creditors have offered an appraisal at $5,350,000 as of 9/9/22, and Beata Wilson has offered an appraisal at $4,350,000 as of 12/19/22.

Based on the lower $4,350,000 valuation, the minimum bid would have to exceed 90% of this valuation, or $3,915,000, and exceed Beata Wilson's homestead exemption of at least $75,000, plus the senior lien of Chase Bank of $4,097,967.96, or $4,172,967.90.  Thus, the minimum bid would be at least the greater of these two amounts, or $4,172,967.90.  The minimum bid would be $100,000 more if Beata Wilson is entitled to claim a $175,000 exemption. Based on the higher $5,350,000 valuation, the minimum bid would have to exceed 90% of this valuation, or $4,815,000.

At the hearing, the court will have to determine the entitlement of Beata Wilson to a homestead exemption and the amount, the fair market value of the property, and whether the sale would produce a bid that would meet the statutory minimum.

Updated tentative ruling as of 1/17/23.   This contested matter is set for an evidentiary hearing on 1/19/23.  Since the court is conducting hearings in hybrid format, that is, in person in the courtroom and by videoconferencing on Zoom for Government, witnesses ordinarily must appear to testify in person in open court pursuant to Federal Rule of Bankruptcy Procedure 9017, which makes Federal Rule of Civil Procedure 43 applicable in bankruptcy cases, specifying that witness testimony must be taken in open court, but for good cause in compelling circumstances and with adequate safeguards, the court may permit testimony in open court by contemporaneously from a different location (i.e.., remotely).  On 1/17/23, counsel for the judgment creditors, Mr. Wallin, advised chambers that all parties want to the hearing be be fully remote and that one witness is sick.  However, there is no stipulation of the parties to confirm these representations, and the court is hesitant to affect the rights of the parties under FRBP 9017 and FRCP 43 to have testimony in person in open court unless the court can make specific findings to alter those

# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Robert Kwan, Presiding
### Courtroom 1675 Calendar

**Thursday, January 19, 2023**                                    **Hearing Room    1675**

---

1:00 PM

**CONT...    David Alan Wilson**                                              **Chapter 7**

rights or the parties stipulate to allow remote testimony and appearances. Chambers advised counsel for the judgment creditors that the parties should submit a stipulation and proposed order if they are requesting that the hearing be conducted fully remote.  As it stands now, counsel who are not witnesses may choose to appear in person or remotely, the witnesses who are testimony are required to appear in person unless the court can make findings under FRBP 9017 and FRCP 43 that there is good cause in compelling circumstances with adequate safeguards that they testify remotely and the court's concerns should be alleviated if the parties stipulate to allow witnesses to testify remotely, and the witness who is sick should not appear in person for everyone's health, and the court and the parties will confer at the hearing about allowing that witness to testify remotely.   The court intends to update this tentative ruling regarding the merits of the contested matter.

Appearances are required on 1/19/23, but counsel and self-represented parties must appear either in person in the courtroom or remotely through Zoom for Government in accordance with the court's remote appearance instructions.

| Party Information |
|---|

**Debtor(s):**

David Alan Wilson                    Represented By
                                     Michael N Nicastro
                                     Christina M Chan
                                     Eryk R Escobar

**Defendant(s):**

David A Wilson                       Represented By
                                     Jon-Michael A Marconi
                                     James Andrew Hinds Jr
                                     David Samuel Shevitz
                                     Christopher A Dias

**Plaintiff(s):**

McKnew, Thomas I. IV                 Represented By
                                     James Andrew Hinds Jr
                                     Paul R Shankman

# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Robert Kwan, Presiding
### Courtroom 1675 Calendar

**Thursday, January 19, 2023**                                                      **Hearing Room          1675**

<u>1:00 PM</u>
**CONT...**        **David Alan Wilson**                                                                      **Chapter 7**

Hye Jin Jang
Brian Barouir Yeretzian
Rachel M Sposato
Michael A Wallin

Lisa A McKnew                               Represented By
James Andrew Hinds Jr
Paul R Shankman
Hye Jin Jang
Brian Barouir Yeretzian
Rachel M Sposato

**<u>Trustee(s):</u>**

Weneta M Kosmala (TR)                        Represented By
Thomas H Casey

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

15615 Alton Pkwy., Suite 210, Irvine CA 92618

A true and correct copy of the foregoing document entitled (*specify*):

REPLY IN SUPPORT OF MOTION TO AVOID LIEN UNDER 11 U.S.C. §522(f)

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) ___09/18/2023___, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
Michael A Wallin mwallin@wallinrussell.com
Anerio V Altman LakeForestBankruptcy@jubileebk.net, lakeforestpacer@gmail.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**

On (*date*) ___09/18/2023___, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Jing Wang
Kingswood Law PC
1800 E. Lambert Rd., Ste. 215
Brea, CA 92821

The Honorable Scott C. Clarkson
U.S. Bankruptcy Court,
Ronald Reagan Federal Building
411 West Fourth Street Suite 5130
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ___09/18/2023___, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Debtor via email and Jubilee Notices Automated Court Notice Email Management. [Email address protected by the Attorney-Client Privilege]

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

| | | |
|---|---|---|
| 09/18/2023 | Bert Briones | /s/ Bert Briones |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**